IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BEAVER COUNTY RETIREMENT BD.**, | : | Case No. 1:07-CV-750 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING MOTION |
| | : | FOR RECONSIDERATION |
| **LCA-VISION INC., et al.**, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

Before the Court is Lead Plaintiff Beaver County Retirement Board's Motion for Reconsideration of the Court's March 25, 2009 Order. (Doc. 62.) That Order granted Defendants' Motion to Dismiss With Prejudice. (*See* doc. 61.) The pending motion, made under Rule 59(e) of the Federal Rules of Civil Procedure, petitions the Court to alter or amend its judgment so that the dismissal of the action would be "without prejudice." For the following reasons, the motion is DENIED.

**I. BACKGROUND**

In this securities fraud action, Lead Plaintiff Beaver County Retirement Board ("Plaintiff" or "Beaver County") sought to represent itself and a putative class of all those who purchased or otherwise acquired the publicly traded securities of LCA-Vision, Inc. ("LCA" or the "Company") between October 24, 2006 and November 2, 2007 (the "Class Period").[1]

---

[1] The Class Period alleged in the original Complaint was February 12, 2007 through July 30, 2007. (Doc. 1 ¶ 1.)

Beaver County filed its original class action Complaint on September 13, 2007.  (Doc. 1.) Shortly thereafter, two other plaintiffs filed putative class action lawsuits against LCA asserting substantially the same claims as those asserted by Beaver County.  In November 2007, Beaver County filed a motion under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(ii), and Rule 42(a) of the Federal Rules of Civil Procedure to consolidate these related cases and be appointed as lead plaintiff.  (Doc. 3.)  The Court granted Beaver County's motion to consolidate on December 21, 2007 and granted the motion for appointment as lead plaintiff on January 25, 2008.  (Docs. 7, 13.)  Then, on April 9, 2008, Beaver County filed a Consolidated Complaint.  (Doc. 21.)

In the Consolidated Complaint, Plaintiff alleged that LCA and LCA executives Steven E. Straus, Alan H. Buckey, and Craig P.R. Joffe violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC") when they made repeated false and misleading guidance projections and engaged in false financial reporting throughout the Class Period.  Specifically, Plaintiff alleged that Defendants made materially false and misleading statements and omissions during the Class Period concerning (1) LCA's 2007 earnings per share ("EPS") guidance projection and revenue growth, which were being impacted by weakness in consumer spending; (2) its growing bad debt exposure; and (3) its year-end 2006 financial results, which should have deferred revenue associated with the sale of lifetime warranties.  Plaintiff claimed that investors did not learn the truth concerning the Company's business and prospects until October 30, 2007 when the Company issued a press release admitting that it was unable to predict its fourth quarter EPS and that it was suspending financial guidance indefinitely.  Plaintiff alleged that by means of their

fraudulent conduct, Defendants deceived the investing public regarding LCA's prospects and business, artificially inflated the price of LCA's common stock, and caused Plaintiff and other putative class members to purchase LCA common stock at inflated prices.

On July 10, 2008, Defendants moved to dismiss the Consolidated Complaint with prejudice.  (Doc. 31.)  In that Motion, Defendants argued that the Consolidated Complaint should be dismissed with prejudice because "Plaintiffs filed three original complaints, and then submitted the Consolidated Complaint after a five-month opportunity to investigate their allegations and replead their claims."  (*Id*. at 49.)  Defendants cited as support the Sixth Circuit Court of Appeals' decision in *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660 (6th Cir. 2003), in which the court stated, "we think it is correct to interpret the PSLRA as restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure."  *Id*. at 692.

In opposing Defendants' Motion to Dismiss With Prejudice, Plaintiff did not address Defendants' argument that a dismissal should be granted with prejudice.  Plaintiff did not move for leave to file an amended consolidated complaint and did not submit a proposed amended pleading.  Rather, in a footnote in its opposition memorandum, Plaintiff stated, "[i]n the event the Court grants defendants' motion in whole or in part, Plaintiffs respectfully request leave to amend."  (Doc. 38 at 47.)

The Court heard oral argument on the parties' positions on March 3, 2009.  Thereafter, the Court granted Defendants' Motion to Dismiss With Prejudice, finding that Plaintiff had failed to state a claim under sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5.  (Doc. 61.)  In particular, the Court found that the Consolidated Complaint failed to

satisfy the pleading requirements of the PSLRA, 15 U.S.C. § 78u-4(b)(1) and (2), which require a private securities complainant to (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007). The Court found that Defendants were not liable for issuing false guidance because the allegedly false statements made by Defendants were identified as forward looking and were accompanied by meaningful cautionary language — a combination of attributes that placed the statements within the protective ambit of the PSLRA's safe harbor provision. *See* 15 U.S.C. § 78u-5(c)(1). The Court also found that Plaintiff had not adequately alleged that Defendants engaged in false financial reporting. Although Plaintiff alleged facts sufficient to show that Defendants had made certain misrepresentations, Plaintiff did not allege facts that gave rise to a strong inference that Defendants made the alleged misrepresentations with scienter. Because Plaintiff failed to adequately plead an underlying violation of the securities laws or the rules and regulations promulgated thereunder, its section 20(a) claims failed as a matter of law.

      Bearing in mind that allowing repeated amendments to a securities fraud complaint would frustrate the underlying purpose of the PSLRA, and observing that Plaintiff had not properly requested leave to amend under Civil Rule 15(a), the Court dismissed Plaintiff's Consolidated Complaint with prejudice, and the clerk entered judgment in Defendants' favor. Plaintiff now moves the Court to reconsider its decision to dismiss the action with prejudice so that it might move to file an amended consolidated complaint.

## II.  ANALYSIS

Although Plaintiff appropriately makes its motion under Civil Rule 59 for relief from judgment, its memorandum in support focuses on Civil Rule 15(a) governing amended pleadings.  Plaintiff presumably takes this tack to support its argument that Plaintiff will suffer a manifest injustice absent this Court setting aside its judgment because justice would require that Plaintiff be permitted to file an amended pleading.  However, because judgment has been entered in this matter, the Court will analyze the Motion for Relief From Judgment under Rule 59.

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."  *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999)).  However, as recently explained by our sister court in *Corl v. Citizens Bank*, No. 2:08-CV-234, 2009 WL 650424 (S.D. Ohio March 10, 2009),

> a "Rule 59(e) motion may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgement."  *J.P. v. Taft*, No. C2-04-692, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006) (quoting *Brown v. City of Syracuse*, No. 5:01-CV-1523, 2005 WL 2033492, at *1-2 (N.D.N.Y. Aug. 17, 2005)).  Further, "[a] motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly because of the interest in finality and conservation of scarce judicial resources."  *Vanguard Transp. Sys., Inc. v. Volvo Trucks N. Am., Inc.*, No. 2:04-CV-889, 2006 WL 3097189, at *2 (S.D. Ohio Oct. 30, 2006) (quoting *United States v. Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998) (internal citation omitted)).  "If the movant simply regurgitates arguments previously presented or presents arguments which originally could have been argued, then the movant's proper recourse is an appeal to the circuit court.["]  *Id.* (internal citation omitted).

*Id*. at *3 (denying motion for reconsideration when the court had already specifically addressed the plaintiff's "new" argument and dismissed it).

Plaintiff asserts that it discovered new evidence after the parties briefed the Motion to Dismiss With Prejudice and after the Court's Order granting the Motion, and that it should be permitted to file an amended complaint based on this newly discovered evidence. Plaintiff also seeks reconsideration in order to avoid manifest injustice to Plaintiff and the class of injured investors it represents.

**A. Newly Discovered Evidence**

Plaintiff claims that it has newly discovered evidence that relates to the allegations of its Consolidated Complaint concerning false guidance. It states that the newly discovered information supports Plaintiff's allegations that Defendants knowingly made false statements that are not protected by the PSLRA's safe harbor provisions. The newly discovered evidence is summarized as follows:

> During the Class Period top executives of LCA Vision met every Monday at 1 p.m. at Company headquarters to review the previous week's data generated by the Mozart system.[2] Straus and Buckey were present at those Monday meetings. Mike Celebrezze ("Celebrezze"), Vice President of Finance, Vice Presidents from Information Services, Human Resources, Staffing, Call Centers and the four Regional Vice Presidents were also a part of these weekly meetings.
>
> During these meetings, the executives would review the Mozart data. Mozart-generated reports were distributed that compared the prior week and quarter-to-date results versus the results from the prior year. These meetings also included discussions concerning results in marketing and advertising. Another report distributed and reviewed at these meetings was a weekly written sales report generated by Barb Ruskaup, Straus's administrative assistant, which contained information from each Company department.
>
> A review of the reports distributed at these meetings, in conjunction with discussions at these meetings, showed an overall decline in business. As a result of declining business, Straus instructed Celebrezze to begin monthly meetings with top Vice Presidents from Call Centers, Staffing, Marketing and the Regional Vice Presidents. These meetings began in early 2007 and were held at the

---

[2] Mozart is LCA's internal computerized data tracking system.

>Company headquarters. During these meetings, which sometimes lasted all day long, Celebrezze was provided with data from every center in each of the four regions, including number of calls, appointments, no-shows and completed procedures. Strauss would periodically attend these meetings.
>
>In addition, beginning in April 2007 (6 months into the Class Period) LCA experienced a surge in treatment errors and quality control problems under Straus' leadership. This claim was made by the Company's former director of internal audit in an article in the Business Courier of Cincinnati dated February 20, 2009. The allegations included that: "LCA recorded 71 wrong treatments in the 18 months ended Oct. 31, 2008, triple its annual average from 2004 through 2006."
>
>Two physicians interviewed by the Courier corroborated the allegations. As set forth in the article, "[a]ccording to those interviewed, wrong treatments include cases where the wrong file was used to treat patients or incorrect data was entered into the laser device prior to surgery. In other cases, patients didn't receive the treatment they requested. On a statistical basis, the treatment errors represented less than three-tenths of a percent of LCA surgeries."
>
>The former director of internal audit claimed that staffing changes and budget cuts, initiated by Straus, caused the problems. In fact, Straus confirmed that wrong treatments were an issue for the company in 2007 and 2008.

(Doc. 62-1 at 5-6).

Plaintiff believes that these new facts, coupled with the allegations in the Consolidated Complaint, demonstrate that the warnings accompanying Defendants' financial results were not meaningful because contemporaneous facts existed at the time that showed that the warnings were not tailored to the actual problems causing a decline in LCA's business.

To succeed on motion to alter or amend a judgment on the ground of newly discovered evidence, the moving party must demonstrate that the "newly discovered evidence" was previously unavailable. *GenCorp, Inc.*, 178 F.3d at 834. "This requires a showing that the evidence could not have been discovered previously with due diligence." *Montgomery v.*

*Bagley*, 581 F.3d 440, 452 (6th Cir. 2009) (citing 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2808 (3d ed. 1998) (citing cases)).

The first category of newly discovered evidence offered by Plaintiff pertains to meetings between LCA executives that occurred at some unspecified time during the Class Period but prior to early 2007. Reports distributed at those meetings purportedly showed an overall decline in business. As a result of this alleged unspecific decline in business, LCA CEO Straus instructed LCA's vice president of finance to hold meetings, beginning in early 2007, with company vice presidents from call centers, staffing, and marketing. The second category of newly discovered evidence purportedly demonstrates that LCA began having a surge in treatment errors in April 2007 and that this information was publicly revealed in an article in the *Business Courier of Cincinnati* dated February 20, 2009.

Plaintiff has not established that it exercised due diligence in obtaining the "new" evidence relating to the pre-2007 LCA executive meetings: it does not explain how it obtained the evidence it now has, it does not claim there were any obstacles to obtaining the information about the weekly meetings, and it does not explain why it did not include the evidence in the Consolidated Complaint or its opposition to Defendants' Motion to Dismiss With Prejudice. Neither has Plaintiff established that it exercised due diligence in obtaining the evidence relating to the treatment errors, which occurred in 2007 and were reported in a newspaper in February 2009. At a minimum, there is no reason why Plaintiff could not have brought this evidence — which was printed in a newspaper and was thus available to anyone — to the Court's attention at the March 3, 2009 oral argument on Defendants' Motion.

When a party seeking reconsideration fails to provide any explanation for not producing the evidence earlier, a district court is not required to consider that evidence. *See*, *e.g.*, *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that the district court did not abuse its discretion in refusing to consider new evidence when plaintiff provided no reason why the evidence could not have been produced earlier). Therefore, the Court need not consider the "new evidence" provided by Plaintiff in this case.

Even if the Court were to consider the new evidence submitted by Plaintiff, the evidence is insufficient to guide the Court to a different conclusion than the one it reached when it first considered Defendants' Motion to Dismiss With Prejudice. The argument Plaintiff now makes is the same argument it made in its memorandum in opposition to Defendants' Motion: that Defendants' warnings were not meaningful because they contradicted contemporaneous facts known to Defendants. Plaintiff alleged in the Consolidated Complaint that Defendants could see from their analysis of the Mozart data tracking system that demand for the lasik procedure was not as strong as represented to the public. According to the Consolidated Complaint, Defendants repeatedly confirmed 2007 guidance despite knowing that the guidance was impossible to meet.

The Court found that Plaintiff's false guidance claim failed because the guidance issued by Defendants constituted forward-looking statements accompanied by meaningful cautionary language. Accordingly, Defendants were immune from liability based on those statements because the statements fell within the safe harbor provision of section 21E of the Securities Exchange Act, 15 U.S.C. § 78u-5(c)(1). Plaintiff now contends that the additional evidence it seeks to present would lead this Court to a different conclusion, namely, that the cautionary statements accompanying LCA's guidance were not "meaningful" and therefore do not bring the

guidance under the safe harbor umbrella.  Plaintiff argues that the warnings were not meaningful because "contemporaneous facts existed at the time, which showed that the warnings were not tailored to the actual problems causing a decline in LCA's business."  (Doc. 62-1 at 6.)

Plaintiff's new evidence is insufficient to breathe life into its theory of liability that has already once failed.  The new evidence neither implicates nor impacts what Plaintiff maintains was the "actual" or "real" problem causing the decline in LCA's business: recessionary economic conditions and weakness in consumer spending.[3]  While LCA's top executives may have obtained Mozart reports and sales reports at meetings prior to early 2007 that showed an overall decline in business, Plaintiff does not claim that these reports pinpointed recessionary economic conditions as the problem or that LCA executives understood the souring economy to be causing flagging demand for laser vision correction.  Neither does Plaintiff claim that the surge in treatment errors and quality control problems beginning in April 2007 had anything to do with LCA's decline in business during the Class Period.  To the contrary, it would seem that if Plaintiff did not know of the treatment errors until February 2009, neither would LCA customers have known of the errors.  If the surge in treatment errors was not known, it could not have impacted LCA's business.  In other words, Plaintiff fails to allege any link between the purported treatment errors and the "true" problem of waning consumer demand.

---

[3] Plaintiff reiterates in its memorandum in support of its Rule 59(e) motion that "although the economy was already negatively affecting LCA's business, Defendants failed to alter the warnings relating to the economy."  (Doc. 62-1 at 8.)  According to Plaintiff, LCA should have issued during the Class Period the type of warning LCA currently includes in its 10-K.  The warning now states, "Our industry is highly correlated with consumer confidence.  Recessionary economic conditions, uncertainty in credit markets, a period of rising energy costs and depressed housing prices have all contributed to a deterioration in volume, especially from patients at lower-income levels."  (*Id.* at 9, quoting LCA's 2008 10-K.)

Plaintiff's new evidence, therefore, does not add anything to the analysis already undertaken by the Court. The Court found that LCA publicly addressed the Company's ineffective marketing strategies and weakness in procedure volumes during the Class Period.[4] LCA also specifically warned that the business was "highly correlated with consumer confidence." (Doc. 61 at 27, quoting LCA 2006 10-K.) Plaintiff's new evidence does not, as Plaintiff suggests, demonstrate that LCA knew its business was being negatively impacted by flagging consumer demand and yet failed to issue a warning specifically addressing that fact. Thus, even if Plaintiff's Consolidated Complaint included the proposed new evidence, the Court still would have found that the forward-looking statements were accompanied by meaningful cautionary language and were thus protected by the safe harbor provisions of the Securities Exchange Act.

### B. Manifest Injustice

The Court granted Defendants' Motion to Dismiss With Prejudice after determining that the purpose of the PSLRA would be frustrated by permitting Plaintiff to file an amended complaint in this case. Plaintiff now asks the Court to reconsider this decision, suggesting that denying Plaintiff an opportunity to amend the complaint amounts to manifest injustice. Plaintiff relies on Federal Civil Rule 15(a) as support for this argument.

---

[4] LCA's February 12, 2007 Form 8-K noted that actual results could differ from those forecasted due to uncertainties such as "the successful execution of marketing strategies to cost effectively drive patients to our vision centers, which recent results would indicate are no longer as effective as they have been in prior periods." *See* Order, doc. 61, at 23. When asked by an analyst during a July 31, 2007 investors' conference call to explain the reported weakness in procedure volumes, Mr. Strauss said, "I remind everybody that this is retail medicine and it is an elective procedure. It is high-priced. It's a self-paid procedure. And whatever the economy does, plus or minus, will have an impact on our business and the business of our competitors in this sector." *Id.* at 25-26.

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." As explained by the Supreme Court, "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason is not an exercise of discretion; it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Sixth Circuit's position on the matter is that "it is necessary to permit the liberal amendment of complaints in order to adhere to 'the principle that cases should be tried on their merits rather than on the technicalities of pleading.'" *Fisher v. Roberts*, 125 F.3d 974, 977-78 (1997).

This Court does not dispute Plaintiff's assertion that leave to amend is generally freely given under Rule 15(a). However, Plaintiff does not give due weight to the impact that the PSLRA has on the pleading of securities fraud claims. The Sixth Circuit has expressly held that, in light of the heightened pleading requirements of the PSLRA, "it is correct to interpret the PSLRA as restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure." *Miller v. Champion Enter. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003).

In *Miller*, the Sixth Circuit considered the tension between Rule 15(a) and the pleading requirements of the PSLRA and found that "the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA." *Id.* at 692. In so holding, the Sixth Circuit affirmed the decision of the district court, which engaged in a thorough discussion of the implications of the PSLRA on Rule 15. *See In re Champion Enter., Inc. Sec. Litig.*, 145 F. Supp. 2d 871 (E.D. Mich. 2001). The district court reviewed and summarized the legislative history of the PSLRA, illuminating the intent of

Congress to use the strict pleading requirements of the Act "to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis[, t]o provide a clearer statement of plaintiffs' claims and scope of the case[, t]o encourage attorneys to use greater care in drafting their complaints[, and t]o make it easier for innocent defendants to get cases against them dismissed early in the process." *Id*. at 873-74 (quoting selected bill provisions of the Conference Report to H.R. 1058/S. 240, 141 Cong. Rec. S19152 (daily ed. Dec. 22, 1995)). The PSLRA states, "In any private action arising under this chapter, the court *shall*, on the motion of any defendant, dismiss the complaint if the [pleading] requirements . . . are not met." 15 U.S.C. § 78u-4(b)(3)(A). The district court thus concluded,

> The plain language of the Reform Act does not contemplate amending complaints; it *does* set a high standard of pleading which if not met results in a mandatory dismissal. The necessary goal of this plain, and strong, language, is that it should be dismissed *with prejudice*. To conclude otherwise would be to abrogate the very purpose of the legislation.

*Id*. at 873.

Since deciding *Miller*, the Sixth Circuit has rendered similar decisions upholding dismissals with prejudice in securities fraud cases. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) and *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563 (6th Cir. 2004). In *PR Diamonds*, not only did the court find that dismissal with prejudice was appropriate because the PSLRA restricted the ability of plaintiffs to amend their complaint, it also was appropriate because the plaintiffs did not attempt to obtain leave to file an amended complaint until after the court had entered a final judgment in the case. Noting that the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), found that leave to amend is properly denied where there is, inter alia, undue prejudice to the opposing party by virtue of allowance of the amendment, the *PR*

*Diamonds* court emphasized that "'in the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment.'" 364 F.3d at 699 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). As in *PR Diamonds*, Plaintiff in this case did not move for leave to amend the Consolidated Complaint until after the entry of judgment. This Court is convinced by its review of relevant and binding case law concerning motions for leave to amend in securities fraud cases that its decision to grant Defendants' Motion to Dismiss With Prejudice was proper in this case.

As a final note, Plaintiff makes much of the fact that the Sixth Circuit has said that "the purpose of the PSLRA would be frustrated if district courts were required to allow *repeated* amendments to complaints filed under the PSLRA," emphasizing that it has not yet been afforded even one opportunity to amend the Consolidated Complaint and this Court would not be allowing *repeated* amendments by granting Plaintiff leave to file an amended pleading. (Doc. 65 at 1 (quoting *Fidel v. Farley*, 392 F.3d 220, 236 (6th Cir. 2004).) It is true that Plaintiff has not filed an amended Consolidated Complaint. However, the Court does not find this one fact to be dispositive of the issue for two reasons: judicial discretion and futility.

First, as discussed above, the PSLRA requires that counsel use great care in drafting their complaints and present a clear statement of plaintiffs' claims and the scope of the case at the earliest stage of the lawsuit. In finding that the PSLRA restricts Rule 15, the Sixth Circuit did not confine the application of that restriction to a plaintiff's second or third request to amend its pleading. Rather, the essential tenet of Rule 15 — that "the grant or denial of an opportunity to amend is within the discretion of the District Court" — remains solidly in place. *Foman*, 371

U.S. at 182.  Neither the Sixth Circuit nor the Supreme Court have hamstrung the district courts with rigid formulas for determining when, in fact, leave to amend is to be granted.  Rather, the trial courts are to consider the facts and circumstances of the case before it, including whether there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id*.  Notably, whether a plaintiff has failed to cure pleading deficiencies by amendments previously allowed is but one factor for consideration.

The Court has considered the timing of the filing of the original Complaint, the Consolidated Complaint, Defendants' Motion to Dismiss With Prejudice, the oral argument on Defendants' Motion, and this Court's order granting Defendants' Motion, as well as the impact of the PSLRA on pleading standards.  Having done so, this Court has determined that Plaintiff was on notice that there were deficiencies in the Consolidated Complaint but did not move for leave to amend until after judgment was entered, and that the PSLRA would be frustrated by permitting a post-judgment amendment.  The Supreme Court admonishes that "outright refusal to grant the leave *without any justifying reason* is not an exercise of discretion; it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules."  *Foman*, 371 U.S. at 182 (emphasis added).  The Court in this case has provided a justifying reason for its conclusion to deny Plaintiff's request to amend its securities fraud pleading.  To summarize, Plaintiff has not shown that an amended order is needed to prevent manifest injustice.

Second, and separately, the Court finds that allowing Plaintiff to amend its Consolidated Complaint to add the new facts discussed above would be futile.  As explained in the preceding

15

section of this Order, the addition to the Consolidated Complaint of the new facts relating solely to the allegations concerning the guidance claim would not alter this Court's determination that the facts alleged fail to state a claim under the PSLRA for securities fraud.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration (doc. 62) is **DENIED**.

**IT IS SO ORDERED.**

                                              ___s/Susan J. Dlott_____
                                              Chief Judge Susan J. Dlott
                                              United States District Court